[No. 33326.   Department One.   February 16, 1956.]

HERBERT DANZ et al., *Respondents,* v. KENNETH SHYVERS *et al., Appellants*[1]

[1]Reported in 293 P. (2d) 772.

*Eddleman & Wheeler,* for appellants.

*Wilbur Zundel,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment in the sum of twenty thousand dollars for attorney's fees in an income tax matter.

G. Robert Brain is an attorney practicing law in Seattle. He was admitted to the bar in 1947. Prior to that time he had gained considerable experience as an accountant. Kenneth C. Shyvers owns and operates "jukeboxes" which are played in taverns and restaurants. The music is relayed from stations located in Seattle, Tacoma, and Bremerton. The money from the boxes is collected once a week and the proceeds divided forty-five per cent to the owner of the cafe and fifty-five per cent to Shyvers. The profits run into a considerable sum of money, as will appear later.

Mr. Shyvers became involved with the Federal government over his income taxes. He employed Mr. Ofell Johnson, an attorney in Seattle, to represent him. He also employed Fernando Perrigo, an accountant, to assist him. Brain entered the picture by representing Perrigo in a suit against Shyvers for his fee. Shyvers was so impressed with Brain that he decided to employ him in the income tax matter. Satisfactory arrangements were made with John-

son, and Brain went to work. When the controversy with the government was ended, a new controversy arose between the parties as to fees, and this action against Mr. and Mrs. Shyvers ensued. Paragraph III of the complaint alleged:

"That within three years last past, at the special instance and request of the defendants, and each of them, individually, and as a marital community, plaintiffs performed legal services for said defendants, in that plaintiffs represented defendants in certain income tax matters before the U. S. Treasury Department and the Bureau of Internal Revenue, the United States District Court and the Tax Court of the United States; that at the time the plaintiffs were employed to represent the defendants, the tax assessments against the defendants amounted to $187,904.51 including fraud penalties on two years. That as a result of plaintiffs' services, the fraud penalties were eliminated and the amount of tax assessed was reduced to $26,583.36. In addition, defendants received a refund from the government in the amount of $91,115.57 or a net gain to the defendants of $252,436.72."

This allegation was admitted by the defendants, who alleged by way of affirmative defense:

"That the plaintiff, G. ROBERT BRAIN, did represent the defendants in certain tax matters as in general set forth in paragraph III of the plaintiffs' Complaint; that the defendants and the said plaintiff did prior thereto agree that the plaintiff should render said service for a set fee of $1500.00, plus an additional $1,000.00 if recovery for the defendants should exceed $10,000.00; that the recovery did so exceed the sum of $10,000.00 and that defendants paid plaintiff therefor the aggregate sum of $2,500.00 as full payment in accordance with said agreement."

The action was commenced January 15, 1954. Defendants answered on February 5, 1954. July 7, 1954, upon stipulation, it was ordered that the trial be continued to October 20th. Other motions for continuance and a demand for jury trial were made by the defendants. The motions for continuance were granted and the motion for jury trial was denied.

January 21, 1955, four days before trial, Mrs. Shyvers filed a separate answer and made demand for jury trial.

The demand for jury trial was denied, but her answer was allowed to stand. In her answer, she alleged that she had ratified and confirmed an agreement made with Brain on September 2, 1952, that he was to receive a total of $3,750 if the recovery from the government was in excess of $10,000.

The trial court found the agreement of September 2, 1952, to be that Brain was to receive a retainer of $1,500, the balance of the fee to be contingent upon the results obtained; that the reasonable fee for services rendered was $22,500, of which $2,500 had been paid; and entered judgment for the plaintiffs in the sum of $20,000.

Although sixteen assignments of error are claimed, there are only two main issues to be decided: (1) What was the agreement as to fees; and (2) if the agreement was as contended for by respondents, what was the reasonable value of the services rendered.

Mr. Brain testified concerning the agreement as to fees:

"I told him we would consider taking it on a contingent basis with a $2500 retainer, because I knew there was a lot of matters involved. The retainer immediately ran into a problem because he said he didn't have $2500. In fact, he didn't have anything, but he would be willing to take $190 a month that he was receiving—a week—I am sorry,—$190 a week he was receiving from another matter and pay that in until he paid the sum of $1500 as retainer.

"Then we went to the question of contingency fee. I told him of course I couldn't tell because Mr. Johnson's letter indicated that there was a lot of work to be done. Mr. Shyvers indicated that there was nothing to be done. I didn't know the condition of the file and I didn't know. all of the issues that were involved, and at least over the two and a half years this whole case has been filed since I last had anything to do with it; that I would do this, that I would base our fee primarily upon the results that were obtained and that we would make it reasonable fee contingent on the results as we were able to accomplish those. And he said that would be satisfactory. He wanted to know somewhat what the contingent fee ran. I said in other types of cases they ran $33\frac{1}{3}$ to 40 percent, on small matters involving matters around eight, ten thousand; . . ."

Mr. Brain wrote appellants several letters, one of which was dated October 1, 1952. We quote a portion thereof:

"Dear Mr. & Mrs. Shyvers:
"Enclosed please find the statement of your account as of this date. As shown thereon, the balance due upon the agreed retainer of $1500.00 is the sum of $740.00. In accordance with our original understanding, the balance of our fee will be contingent upon the results."

No objection was made to this statement as to fees until shortly before this action was commenced.

Mr. Shyvers testified as to the agreement:

"A. Mr. Brain said, 'You have an offer in mind?' And I replied, 'I think that is up to you. You represented Mr. Perrigo very successfully; you know the case thoroughly. I suggest you start the negotiations off, considering that you are under contract for four days.'

"He replied, 'I think it is up to you, Mr. Shyvers.' I said, 'Okay, I offer you $1,500 to be paid at the rate of $190 a week on some money that I have coming in out of the construction business and out of the music business, and will be paid, and I am prepared to pay you one of those checks tonight.'
"  .  .  .
"Mr. Brain said, 'What do you offer?' I replied, 'If nothing is recovered over $10,000, the $1500 is to cover everything and all things. Do we understand each other?'

"And Mr. Brain said 'Yes. Now on the possibility that we recover over that, what do you offer?' I replied, 'If we recover over $10,000, we will pay you $2,000 additional.' Mr. Brain replied, 'I was going to say $2500.' I said, 'That would make a total of $4,000. My proposition is $3500. I will compromise with you at $3750,' and Mr. Brain replied, 'I accept.' Q. Did you make any notes at that time while Mr. Brain was present? A. I not only made notes, I repeated with Mr. Brain these once more almost word for word so there could not possibly, under any circumstances, be any misunderstanding."

Mr. Shyvers produced notes concerning the agreement, written by him on the back of an agreement entered into with Perrigo. He testified that the notes were made September 2, 1952, in the presence of Mr. Brain and read back to him. The notation was:

"Brain agreement
Total $3750. if
recovery amounts
to more than
10000. $1500.00
minimum win
draw or lose.
3750.00
1500.00
_____
2250.00
1500
190 Sept. 2 1952
_____
1310
& 190 each
week until Paid.
_____
$1500. Pd in full as agreed
Before Jan 9 1953"

Mrs. Shyvers produced a ledger sheet covering the $1,500 account with Robert Brain, showing a payment of $190 each week. This was written in pencil. On the right hand side she wrote in ink the terms of the agreement with Brain, as testified to by Mr. Shyvers. She testified that she wrote it in 1952 on information furnished her by her husband.

Then the appellants produced a surprise witness, one James R. Hammons. He testified that he had an appointment with Mr. Shyvers at five-thirty in the afternoon of September 2, 1952, in connection with a lease; that, as he approached the office, he heard voices; that he recognized Mr. Shyvers' voice; that he sat down on a ledge near the window for thirty or forty minutes and listened to the conversation. His testimony as to the conversation was almost identical with that of Mr. Shyvers.

The trial judge believed the testimony of Mr. Brain as to the agreement. He did not believe the testimony of Mr. Shyvers, Mrs. Shyvers, or Mr. Hammons, nor do we. An examination of the two written memoranda produced by Mr. and Mrs. Shyvers convinces us that the court was correct in concluding that they were not written at the times claimed by them, but were written shortly before the trial for the purpose of bolstering their oral testimony.

■ Finding of fact No. 3 is almost identical in language with paragraph III of the complaint, which was admitted by the defendants. Appellants assign as error the entry of finding No. 3. However, the finding was not set out in appellant's brief in compliance with Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953, and the assignment of error will not be considered.

■ On the question of fees, Mr. Brain testified at length concerning the amount of work done, the paper, books and documents in the files, the problems involved, and the various conferences with government representatives. Mr. H. B. Jones and Mr. Francis A. LeSourd, of the Seattle bar, testified for the plaintiffs, and Mr. Burns Poe, of the Tacoma bar, testified for the defendants. All three of the attorneys specialize in tax cases. Mr. Poe was collector of internal revenue for a number of years. Mr. Jones testified that in his opinion a reasonable fee would be $25,000; Mr. LeSourd, $27,000; and Mr. Poe, $7,500. The trial court was entirely justified, from the record, in allowing a fee of $22,500.

■ Error is assigned to the refusal to grant the motion of Mrs. Shyvers for a jury trial. The order of Judge Wilkins, who heard the motion, correctly stated that it came too late under King county court rules.

Appellants contend that Mrs. Shyvers appeared for the first time when she filed her answer of January 21, 1955, and that her demand for jury trial was therefore timely made. Judge Wilkins found, and the record bears him out, that she appeared when the defendants first answered on February 5, 1954. He merely permitted her to amend the answer previously made.

Error is assigned in the admission of an exhibit prepared by Mr. Brain the night before the trial, showing the work done in the tax case. We are satisfied from the record that the trial court did not consider this exhibit in arriving at its decision.

■ Error is assigned in failing to grant a new trial upon a showing by affidavits that government records, discovered subsequent to the trial, showed that respondent Brain had testified incorrectly regarding the recovery of approxi-

mately four thousand dollars on seven different occasions, and that his experts had considered that testimony in giving their opinion as to a fee. Trial courts have a wide discretion in granting or refusing new trials and the refusal to grant a new trial will not be disturbed unless the court abused its discretion. *Strong v. Sunset Copper Co.*, 9 Wn. (2d) 214, 114 P. (2d) 526, 135 A. L. R. 423. There was no abuse of discretion in this respect.

We find no merit in the other assignments of error and will not discuss them.

The judgment is affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

March 23, 1956. Petition for rehearing denied.